UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA
Civ. No. CV-04-3087 (PAM/RLE)

UNITED STATES OF AMERICA,          *

    Plaintiff,                     *

    v.                             *

ROBERT ZEMAN,                      *

    Defendant.                     *

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## CONSENT DECREE

WHEREAS, Plaintiff United States of America ("United States"), on behalf of the United States Department of Housing and Urban Development ("HUD") and the United States Environmental Protection Agency ("EPA"), has filed a complaint alleging that Robert Zeman ("Defendant") violated Section 1018 of the Residential Lead-Based Paint Hazard Reduction Act of 1992 ("Section 1018"), 42 U.S.C. § 4852d; and

WHEREAS, Section 1018 and the implementing regulations, found at 24 C.F.R. Part 35, Subpart A, and 40 C.F.R. Part 745, Subpart F, require, among other things, that the owners and managing agents of residential properties subject to the law make certain disclosures and provide certain records concerning Lead-Based Paint and Lead-Based Paint Hazards to tenants when a new lease is entered into or, if the lease predates the effective

date of Section 1018, at the first change to the terms of an existing lease, such as a rent increase; and

WHEREAS, Defendant owns and manages 19 residential properties in Minnesota constructed prior to 1978 containing approximately 22 units; and

WHEREAS, the United States alleges that Defendant failed to make certain disclosures required by Section 1018 in 19 residential properties in Minnesota; and

WHEREAS, subsequent to HUD and EPA initiating their investigation, but prior to entry of this Consent Decree, Defendant retained a certified Lead-Based Paint risk assessor to conduct combination Lead-Based Paint inspections and risk assessments of all the residential properties in which he has an ownership and management interest to determine whether the properties contain Lead-Based Paint; and

WHEREAS, Defendant has agreed to abate Lead-Based Paint identified in his residential properties; and

WHEREAS, the United States alleges it is entitled to seek injunctive relief in a judicial action, including, but not limited to, an order requiring Defendant to comply with Section 1018 prospectively, and an order requiring Defendant to abate Lead-Based Paint; and

WHEREAS, the United States alleges that Defendant is subject to administrative civil penalties by HUD and EPA for violations of Section 1018 of up to $11,000 per violation; and

WHEREAS, the United States and Defendant agree that settlement of the claims of the United States without further litigation is in the public interest and that entry of this Consent Decree is an appropriate means of resolving this matter; and

WHEREAS, the Parties agree that settlement and entry of this Consent Decree does not constitute admission or acknowledgment of liability or wrongdoing by Defendant, but is intended solely to settle all claims asserted by the United States against Defendant on the terms set forth herein.

NOW, THEREFORE, upon consent and agreement of the United States and Defendant, and the Court having considered the matter and been duly advised,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED as follows:

## I. **JURISDICTION AND VENUE**

1. The Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1345 and 42 U.S.C. § 4852d(b)(2) and has personal jurisdiction over the Defendant. Defendant consents to, and shall not challenge entry

of, this Consent Decree and the Court's jurisdiction to enter and enforce this Consent Decree.

2.   Venue is proper in this Court pursuant to 42 U.S.C. § 4852d(b)(2) and 28 U.S.C. § 1391(b) and (c), because the lawsuit involves actions that took place, and 19 Subject Properties are located, in the District of Minnesota.

## II.   **PARTIES BOUND**

3.   This Consent Decree shall apply to and be binding upon the United States and Defendant, and his heirs, successors and assigns.

4.   Defendant shall remain liable to the United States for all the obligations set forth in this Consent Decree regardless of whether Defendant sells or transfers any property subject to this Consent Decree.

## III.   **DEFINITIONS**

5.   Unless otherwise expressly provided herein, terms used in this Consent Decree, which are defined in the Residential Lead-Based Paint Hazard Reduction Act, shall have the meaning given in the Act or in any regulations promulgated pursuant to the Act.  Whenever other terms listed below are used in this Consent Decree, the following definitions shall apply:

a. "Clearance Examination" shall mean an activity conducted after Lead-Based Paint abatement activities have been performed to determine that the abatement activities are complete and that no settled dust-lead hazards exist. The clearance process includes a visual assessment and collection and analysis of environmental samples. The appropriate clearance standards shall be the more restrictive of those set by the jurisdiction where the property is located or by Section 403 of the Toxic Substances Control Act ("TSCA") and its implementing regulations, 40 C.F.R. Part 745, Subpart D.

b. "Day" shall mean a calendar day. In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the period shall run until the close of business of the next working day.

c. A "force majeure event" shall mean any event beyond the control of Defendant, its contractors, or any entity controlled by Defendant that delays the performance of any obligation under this Consent Decree despite Defendant's best efforts to fulfill the obligation. "Best efforts" includes anticipating any potential force majeure event and addressing the effects of any such event (a) as it is occurring and (b) after it has occurred, to prevent or minimize any resulting delay to the

greatest extent possible. "Force Majeure" does not include Defendant's financial inability to perform any obligation under this Consent Decree.

d. "HUD Guidelines" shall mean the edition of the "HUD Guidelines for the Evaluation and Control of Lead-Based Paint Hazards in Housing" in effect on the date the work is conducted pursuant to this Consent Decree.

e. "Interest" shall mean interest pursuant to 28 U.S.C. § 1961.

f. "Lead-Based Paint" shall mean paint or other surface coatings that contain lead equal to or in excess of 1.0 milligram per square centimeter or 0.5 percent by weight.

g. "Lead-Based Paint Free" shall mean housing that has been found to be free of paint or other surface coatings that contain lead equal to or in excess of 1.0 milligram per square centimeter or 0.5 percent by weight.

h. "Lead-Based Paint Hazards" shall mean lead-based paint hazards as that term is defined in 40 C.F.R. 745.65.

i. "Lead Abatement Supervisor" shall mean any person licensed by the State in which the property is located to perform lead abatement and mitigation, and supervise lead abatement workers who perform lead abatement and mitigation.

j.    "Paragraph" shall mean a portion of this Consent Decree identified by an Arabic numeral or a lower case letter.

k.    "Section" shall mean a portion of this Consent Decree identified by a roman numeral.

l.    "Subject Properties" shall mean the properties listed on Appendix A, attached hereto.

## IV.    COMPLIANCE WITH SECTION 1018

6.    Defendant shall comply with all requirements of Section 1018 and its implementing regulations.

7.    To the extent not previously accomplished, no later than ten (10) days after entry of this Consent Decree, Defendant shall provide to each tenant in the Subject Properties a lead hazard information pamphlet approved by EPA, as well as a "lead paint disclosure form" which shall include at a minimum the following:

a.    Any known information concerning Lead-Based Paint Hazards and/or Lead-Based Paint in the Subject Properties;

b.    A list of any available records or reports, or summaries thereof, pertaining to Lead-Based Paint Hazards and/or Lead-Based Paint in the Subject Properties; and

c.   A Lead Warning Statement containing the specific language set forth in regulations promulgated pursuant to Section 1018.

8.   Within twenty (20) days after entry of this Consent Decree, Defendant shall provide written notice to HUD that he has complied with the requirements of Paragraph 7 of this Consent Decree.

## V.   PAYMENT OF PENALTY

9.   Within thirty (30) days after entry of this Consent Decree, Defendant shall pay a civil penalty of $2,000.00 to the United States as an administrative penalty for past violations of Section 1018.

10. Payment of the civil penalty shall be rendered by cashier's check to the United States Department of Justice, in accordance with instructions provided to Defendant by the Financial Litigation Unit of the U.S. Attorney's Office for the District of Minnesota.

11. Notification that payment of the civil penalty has been made, referencing the USAO File Number 2002V00517 and the civil action case name and case number of the District of

Minnesota, shall be provided in accordance with the notification provisions of Section XVI.

12.   If Defendant fails to make any payment under Paragraph 9, he shall be subject to Stipulated Penalties pursuant to paragraph 24 of this Consent Decree.  In addition, Interest shall accrue on any unpaid amounts until the total amount due has been received.

13.   Defendant shall not deduct the civil penalty paid to the United States, or any Interest or Stipulated Penalties, paid under this Consent Decree from his federal, state, or local income taxes, and the United States does not in any way release Defendant from any claims arising under Title 26 of the United States Code.

## VI.   **WORK TO BE PERFORMED**

14.   This Section shall govern the combination Lead-Based Paint inspections and risk assessments, and abatement work to be performed under this Consent Decree at all Subject Properties.

15.   In connection with this agreement, Defendant had a combination Lead-Based Paint inspection and risk assessment performed on each Subject Property for Lead-Based Paint and/or Lead-Based Paint Hazards consistent with Chapters 5 & 7 and of

the HUD Guidelines.   For each Subject Property, Defendant provided a copy of the combined Lead-Based Paint inspection and risk assessment report ("Combination Report") to HUD.

16.a.  No later than ninety (90) days after the date of entry of this Consent Decree, Defendant shall provide copies to HUD of a plan for Lead-Based Paint abatement ("Abatement Plan") for all Subject Properties where Lead-Based Paint has been identified.  The Abatement Plan shall be prepared by a certified Lead Abatement Supervisor and shall include a list of property addresses to be abated, a list of properties with children, information about the components to be abated, the method of abatement chosen, and the names of certified abatement contractors.  The Abatement Plan shall be prepared to ensure that Lead-Based Paint abatement activities required by Section VI of this Consent Decree are conducted in accordance with Chapters 12 and 13 of the HUD Guidelines.  The Abatement Plan shall include specifications as provided in the HUD Guidelines, Appendix 7.3. Lead-Based Paint Abatement Specification, or the equivalent.

b.   After review of the Abatement Plan, HUD shall, in writing:  (1) approve, in whole or in part, the submission; (2) approve the submission with modifications; or (3) disapprove, in whole or in part, the submission, directing the Defendant to

10

resubmit the document after modification to address HUD's comments.  HUD shall respond to Defendant's Abatement Plan within thirty (30) days of submission of such plan.  If HUD disapproves of or requires revisions to the Abatement Plan, in whole or in part, Defendant shall amend and submit to HUD a revised Abatement Plan which is responsive to the directions in HUD's comments, within fifteen (15) days of receiving such comments.  If the Abatement Plan, as revised by Defendant, is still not acceptable to HUD, HUD shall revise the Abatement Plan itself and Defendant shall implement this Plan as revised by HUD, subject to Defendant's right to dispute resolution.  The Abatement Plan must be approved by HUD before any work is performed at the Subject Properties pursuant to this Consent Decree.

c.   No later than thirty (30) days after approval of the Abatement Plan, Defendant shall submit a plan to HUD for ongoing operations and maintenance ("O&M Plan") for those properties that are not Lead-Based Paint Free.  After review of the O&M Plan, HUD shall, in writing: (1) approve, in whole or in part, the submission; (2) approve the submission with modifications; or (3) disapprove, in whole or in part, the submission, directing the Defendant to resubmit the document after modification to address HUD's comments.  HUD shall respond

to Defendant's O&M Plan within thirty (30) days of submission of such plan.  If HUD disapproves of or requires revisions to the O&M Plan, in whole or in part, Defendant shall amend and resubmit to HUD a revised O&M Plan which is responsive to the directions in HUD's comments, within fifteen (15) days of receiving such comments.  If the O&M Plan, as revised by Defendant, is still not acceptable to HUD, HUD shall revise the O&M Plan itself and Defendant shall implement this Plan as revised by HUD, subject to Defendant's right to dispute resolution.  The O&M Plan shall be prepared in accordance with Chapters 6 and 17 of the HUD Guidelines.

17.    For each Subject Property where Lead-Based Paint has been identified, the following work shall be performed:

a.    Lead-Based Paint abatement of the units, common areas, and exteriors of each Subject Property shall be completed within three (3) years after approval of the Abatement Plan. Abatement of the following units, common areas, and exteriors shall be completed within six (6) months of approval of the Abatement Plan or within six (6) months after move in for those tenants who move in after approval of the abatement plan:  units where either a child six (6) years old or younger or a pregnant woman resides if the unit was identified in the Combination

Report as containing immediate Lead-Based Paint dust and/or Lead-Based Paint Hazards.  Abatement of the following units, common areas, and exteriors shall be completed within twelve (12) months of the approval of the abatement plan or within twelve (12) months after move in for those tenants who move in after approval of the abatement plan:  units where either a child six (6) years old or younger or a pregnant woman resides but the unit was not identified in the Combination Report as containing immediate Lead-Based Paint dust and/or Lead-Based Paint Hazards. Abatement of the Subject Properties shall be in accordance with the Abatement Plan and with Chapters 12 and 13 of the HUD Guidelines.

b.   No later than sixty (60) days after the approval of the Abatement Plan, any bare soil identified on the grounds of each Subject Property shall be covered with a vegetative ground covering, mulch, or other appropriate covering in accordance with Chapter 11 of the HUD Guidelines.

c.   Worksite preparation and occupant protection shall be in accordance with Chapter 8 of the HUD Guidelines.

d.   Daily and final cleanups shall be in accordance with Chapter 14 of the HUD Guidelines.

e.   Clearance Examinations shall be conducted by a certified Lead-Based Paint risk assessor in each building upon

13

completion of final cleanup in accordance with Chapter 15 of the HUD Guidelines, TSCA Section 403, 15 U.S.C. § 2683 and 40 CFR 745.227(e)(8) and (9).  Within fifteen (15) days of the receipt of the clearance examination report ("Clearance Report"), Defendant shall submit the Clearance Report to HUD.  The Clearance Report shall contain all results of dust samples analyzed at an EPA-accredited laboratory.  If the results indicate that the clearance standard is not achieved, Defendant shall repeat the cleaning procedures identified above under Paragraph 17.d., repeat dust clearance sampling within five (5) days after receipt of the failed Clearance Report, and repeat this procedure until the clearance standard has been attained. All additional Clearance Reports shall be submitted as described above.

f.   In each of the three years, Defendant shall make substantial and reasonable progress on the Lead-Based Paint abatement agreed to in this Consent Decree and shall detail the progress made in the Annual Report required in paragraph 23 of this Consent Decree.  The Parties agree that substantial and reasonable progress shall mean completion of at least one-third (1/3) of the total inventory of Subject Properties in each of the three (3) years.

14

18.   All the requirements of this Section, except the timelines, shall apply where Defendant or any governmental entity first becomes aware of a unit where a child with an elevated blood lead level resides or is a regular visitor.   Defendant shall perform a Lead-Based Paint inspection and risk assessment, complete abatement activity within five (5) months after Defendant first becomes aware of a unit where a child with an elevated blood lead level resides or is a regular visitor. Defendant shall also comply with any work required by any other government entity, such as the City, County, or State.

19.   Ongoing operations and maintenance ("O&M") in all Subject Properties that are not certified Lead-Based Paint Free shall be implemented at the completion of any abatement activity, and shall be in accordance with the O&M Plan and Chapters 6 and 17 of the HUD Guidelines.   During reevaluations, Defendant shall ensure that all abated areas are still intact and the abatement method has not failed.   If any abatement has failed, Defendant shall repair the area in accordance with Chapters 12 and/or 13 of the HUD Guidelines and perform a Clearance Examination within thirty (30) days of discovery.   If dust hazards are discovered as part of ongoing reevaluations, Defendant shall address them according to Chapter 11 of the HUD Guidelines.

15

## VII.    QUALIFICATIONS TO CONDUCT LEAD-BASED PAINT WORK

20.    All Lead-Based Paint inspections, risk assessments, and other Lead-Based Paint work shall be consistent with the HUD Guidelines and conducted by individuals authorized to perform the work in accordance with the laws of the jurisdiction where the property is located.  Persons performing interim controls, visual assessments for O&M, and general maintenance shall be trained in either HUD's one day "Lead Safe Work Practices" class or the HUD/EPA "Remodeling, Repair, and Painting" class.

21.    Defendant shall ensure that Clearance Examinations are not conducted by the same individual and/or same business entity conducting the Lead-Based Paint abatement work that is being evaluated by the Clearance Examination.

22.    Defendant shall ensure that Lead-Based Paint inspections and risk assessments are not done by the same individual and/or same business entity doing Lead-Based Paint abatement work on the Subject Properties.

## VIII.    REPORTING REQUIREMENTS

23.a.    On or before the one (1) year anniversary of the entry of this Consent Decree, and annually thereafter until completion of all Lead-Based Paint abatement, Defendant shall

submit a written Annual Report to HUD.  The Annual Report shall include, at a minimum: (1) status of abatement activities, including the type of abatement method chosen and components abated, and a list of the property addresses where abatement has been completed during that reporting period; (2) the status of ongoing O&M activities in accordance with Paragraph 19; (3) any and all information concerning the cost of the inspections, risk assessments and abatement performed; (4) any Clearance Reports that have not been previously provided to HUD under Paragraph 17.e.; (5) any State or City notices relating to Lead-Based Paint violations at the Subject Properties; (6) a list of properties to be abated in the next reporting period; and (7) a list of units where children 6 years old or under or a pregnant woman moves in during the reporting period, including the date of move in.

b.   Defendant shall ensure contractor compliance with any State and/or City requirements for reporting Lead-Based Paint inspections, risk assessments and abatement work in accordance with the laws of the jurisdiction where the property is located.

## IX.   **STIPULATED PENALTIES**

24.   If Defendant fails to make timely payment of the penalty provided for in Section V, Defendant shall be required to pay as Stipulated Penalties $400 per day.  Stipulated Penalties

17

shall accrue until such time as the original penalty and all accrued Interest and Stipulated Penalties are paid.

25.   If Defendant fails to complete abatement as described in Paragraphs 16, 17 and 18, or to conduct O&M as described in Paragraph 19, Defendant shall pay Stipulated Penalties of $400 per day per violation per each unit, until the abatement and/or O&M is completed.  If any abatement method fails because of Defendant's failure to follow the HUD Guidelines and/or conduct O&M as described in Paragraph 19, those properties shall not be considered abated in accordance with this Consent Decree and Stipulated Penalties shall accrue.

26.   If Defendant fails to submit any information or reports to HUD, as described in Paragraphs 16, 17, and 23 in accordance with the requirements and/or deadlines set forth in this Consent Decree, Defendant shall pay Stipulated Penalties of $200 per day for each day each such submission is deemed inadequate or late.

27.   Payment of Stipulated Penalties shall be made to the United States in the manner set forth in Paragraph 10 of this Consent Decree.

28.   Stipulated Penalties shall accrue regardless of whether the United States has notified Defendant of the violation

18

or made a demand for payment, but need only be paid upon demand.
All penalties shall begin to accrue on the day after payment is
due and shall continue to accrue through the date of payment, or
until the required activity is performed.  However, the United
States may, in its unreviewable discretion, waive or reduce the
amount of any Stipulated Penalty.  Nothing herein shall prevent
the United States from seeking other relief that may be available
for non-compliance, nor prevent the simultaneous accrual of
separate penalties for separate violations of this Consent
Decree.

**X.   FORCE MAJEURE**

29.  If any event causes or may cause a delay in
Defendant's compliance with any provision of this Consent Decree,
Defendant shall notify the United States in writing as soon as
practicable, but in any event within ten (10) days of when
Defendant first knew of the event, or should have known of the
event by the exercise of due diligence.  In this notice,
Defendant shall specifically reference this provision of the
Consent Decree and describe the anticipated length of the delay,
the cause or causes of the delay, the measures taken or to be
taken by Defendant to prevent or minimize the delay, and the
schedule by which those measures will be implemented.  Defendant

shall adopt all reasonable measures to avoid and minimize such delays.

30.    Failure by Defendant to comply with the above notice requirements shall render this Section voidable by the United States as to the specific event for which Defendant failed to comply with such notice requirement, and, if voided, of no effect as to the particular event involved.

31.    The United States shall notify Defendant of its agreement or disagreement with Defendant's claim of unavoidable delay or impediment to performance within 30 days of receipt of the notice provided under this Section.   If the United States agrees that the violation has been or will be caused entirely by circumstances beyond the control of Defendant or any entity controlled by Defendant, including his contractors, and that Defendant could not have foreseen and prevented such delay by the exercise of due diligence, the Parties shall stipulate to an extension of the compliance requirement(s) affected by the delay by a period not exceeding the delay actually caused by such circumstances.   Defendant shall not be liable for Stipulated Penalties for the period of any such delay.

32.    If the United States does not agree with Defendant's claim of a delay or impediment to performance, either

Party may submit the matter to the Court for resolution pursuant to the dispute resolution procedures established in this Consent Decree.  If the Court determines that the violation has been or will be caused entirely by circumstances beyond the control of Defendant or any entity controlled by Defendant, including his contractors, and that Defendant could not have foreseen and prevented such delay by the exercise of due diligence, Defendant shall be excused as to that violation and delay (including Stipulated Penalties), but only for the delay actually caused by such circumstances.

33.   Defendant shall bear the burden of proving that any delay of any requirement of this Consent Decree was caused entirely by or will be caused entirely by circumstances beyond the control of Defendant or any entity he controls, including his contractors, and that Defendant could not have foreseen and prevented such delay by the exercise of due diligence. Defendant shall also bear the burden of proving the duration and extent of any delay attributable to such circumstances.  Absent written approval by the United States, an extension of one compliance date based on a particular event shall not of itself result in an extension of a subsequent compliance date or dates.

34. Unanticipated or increased costs or expenses associated with the performance of Defendant's obligations under this Consent Decree shall not constitute circumstances beyond Defendant's control, or serve as a basis for an extension of time under this Section.

## XI. DISPUTE RESOLUTION

35. Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree. However, the procedures set forth in this Section shall not apply to actions by the United States to enforce the obligations of Defendant under this Consent Decree that Defendant has not timely disputed in accordance with this Section.

36. Any dispute which arises under or with respect to this Consent Decree shall in the first instance be the subject of informal negotiations between the Parties. The period for informal negotiations shall not exceed thirty (30) days from the time the dispute arises, unless it is modified by written agreement of the Parties. The dispute shall be considered to have arisen when one Party sends the other Party a written Notice of Dispute.

37.   If the Parties are not in agreement at the end of this informal negotiations period, the position of the United States shall be controlling unless Defendant files a petition with the Court for resolution of the dispute within twenty-one (21) days of receipt of the United States' final position.  The petition shall set out the nature of the dispute with a proposal for its resolution.  The United States shall have twenty-one (21) days to file a response with an alternate proposal for resolution.  In any such dispute, Defendant shall have the burden of proving that the United States' proposal is arbitrary and capricious.

38.   The invocation of formal dispute resolution procedures under this Section shall not extend, postpone or affect any obligation of Defendant under this Consent Decree not directly in dispute, unless the United States or the Court agrees otherwise.  Stipulated Penalties with respect to the disputed matter shall continue to accrue but payment shall be stayed pending resolution of the dispute as provided in Paragraph 28. Notwithstanding the stay of payment, Stipulated Penalties shall accrue from the first day of non-compliance with any applicable provision of this Consent Decree.   In the event that the Defendant does not prevail on the disputed issue, Stipulated Penalties shall be assessed and paid as provided in Paragraph 28.

## XII.   <u>RIGHT OF ENTRY</u>

39.   HUD, EPA and their representatives, contractors, consultants, and attorneys shall have the right of entry into and upon all Subject Properties owned or controlled by Defendant, at all reasonable times, upon proper presentation of credentials, for the purposes of:

(a)  monitoring the progress of activities required by this Consent Decree;

(b)  verifying any data or information required to be submitted pursuant to this Consent Decree;

(c)  obtaining samples and, upon request, splits of any samples taken by Defendant or his consultants (upon request, Defendant will be provided with splits of all samples taken by the United States); and

(d)  otherwise assessing Defendant's compliance with this Consent Decree.

40.   This Section in no way limits or affects any right of entry and inspection held by the United States, HUD, EPA, the State in which the property is located, or any City in which the property is located pursuant to applicable federal, state or local laws, regulations, or permits.

### XIII.   <u>COVENANT NOT TO SUE</u>

41.   In consideration of the payments required by this Consent Decree and the work to be performed, and except as otherwise provided in this Consent Decree, the United States covenants not to sue or take administrative or other action against Defendant arising out of violations of Section 1018 at the Subject Properties that occurred on or before the date of lodging of this Consent Decree.   This covenant not to sue with respect to Defendant is conditioned upon the complete and satisfactory performance by Defendant of his obligations under this Consent Decree.   This covenant not to sue extends only to Defendant and does not extend to any other person or business entity.

### XIV.   <u>PLAINTIFFS' RESERVATIONS OF RIGHTS</u>

42.   The covenant not to sue set forth above does not pertain to any matters other than those expressly specified in Paragraph 41.   The United States reserves, and this Consent Decree is without prejudice to, all rights against Defendant with respect to all other matters, including but not limited to, the following:

a.   claims based on a failure by Defendant to meet a requirement of this Consent Decree;

b.    claims based upon violations of Section 1018 that occur after the date of lodging of this Consent Decree;

c.    criminal liability; and

d.    all claims not barred by Paragraph 41 of this Consent Decree.

## XV.    **MISCELLANEOUS**

43.    This Consent Decree in no way affects Defendant's responsibilities to comply with all federal, state, or local laws and regulations.

44.    Except as otherwise provided in this Consent Decree, each Party shall bear its own costs and attorneys' fees in this action.

## XVI.    **NOTICES AND SUBMISSIONS**

45.    Whenever, under the terms of this Consent Decree, notice is required to be given or a document is required to be sent by one Party to another, it shall be in writing and directed to the individuals at the addresses specified below, unless those individuals or their successors give notice of a change to the other Party in writing.  Written notice as specified herein shall constitute complete satisfaction of any written notice requirement of this Consent Decree with respect to the United States and Defendant.

46.    All notices and reports shall refer to this Consent Decree and the date of entry of the Consent Decree, and

shall cite the case name of <u>United States v. Robert Zeman</u> and the

case number.

*U.S. Attorney's Office*:

        Chief, Civil Division
        United States Attorney's Office
        U.S. Department of Justice
        600 United States Courthouse
        300 South Fourth Street
        Minneapolis, MN 55415

*U.S. Department of Justice:*

        Chief, Environmental Enforcement Section
        U.S. Department of Justice
        PO Box 7611
        Ben Franklin Station
        Washington, DC  20044

*U.S. Department of Housing and Urban Development:*

        Director, Compliance Assistance and
         Enforcement Division
        Attn: Tara Jordan
        Office of Healthy Homes and Lead Hazard
         Control
        U.S. Department of Housing and Urban
         Development
        451 7th Street, SW
        Room P-7110
        Washington, DC 20410

*U.S. Environmental Protection Agency:*

> Chief, Pesticides and Toxics Enforcement
>   Section
> U.S. Environmental Protection Agency
> Region 5
> 77 West Jackson Boulevard
> Chicago, IL 60604

*Defendant:*

> Robert Zeman
> P.O. Box 11055
> Minneapolis, MN 55411

47.   Any Party may change either the notice recipient or the address for providing notices to it by serving all other Parties with a notice setting forth such new notice recipient or address.

48.   Any notice, report, certification, data presentation, or other document submitted by Defendant pursuant to this Consent Decree which discusses, describes, demonstrates, supports any findings, or makes any representation concerning Defendant's compliance or non-compliance with any requirement of this Consent Decree shall be certified by Defendant or a duly authorized representative of Defendant.  A person is a "duly authorized representative" only if:  (a) the authorization is made in writing; (b) the authorization specifies either an individual or position having responsibility for overall operation of the regulated facility or activity (a duly authorized representative may thus be either a named individual

28

or any individual occupying a named position); and (c) the written authorization is submitted to the United States consistent with this Paragraph.

49.   The certification required by Paragraph 48, above, shall be in the following form:

> I certify that the information contained in or accompanying this [type of submission] is true, accurate and complete. With regard to [the/those identified portion(s)] of this [type of submission] for which I cannot personally verify [its/their] accuracy, I certify under penalty of law that this [type of submission] and all attachments were prepared in accordance with procedures designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, or the immediate supervisor of such persons, the information submitted is, the best of my knowledge and belief, true, accurate and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fines and imprisonment for knowing violations.

Signature:   _____

Name:       _____

Title:      _____

## XVII.   RETENTION OF JURISDICTION

50.   This Court shall retain jurisdiction over this matter for the purpose of interpreting and enforcing the terms of this Consent Decree.

## XVIII.   <u>INTEGRATION</u>

51.   This Consent Decree and its Appendix constitute the final, complete and exclusive agreement and understanding between the Parties with respect to the settlement embodied in this Consent Decree.   It may not be enlarged, modified, or altered unless such modifications are made in writing and approved by the Parties and the Court.   The Parties acknowledge that there are no representations, agreements or understandings relating to the settlement other than those expressly contained in this Consent Decree.

## XIX.   <u>LODGING AND OPPORTUNITY FOR PUBLIC COMMENT</u>

52.   Defendant agrees and acknowledges that final approval of this Consent Decree by the United States and entry of this Consent Decree are subject to the requirements of 28 C.F.R. § 50.7, which provides for notice of the lodging of this Consent Decree in the Federal Register, opportunity for public comment for at least thirty (30) days, and consideration of any comments prior to entry of the Consent Decree by the Court.   The United States reserves its right to withdraw consent to this Consent Decree based on comments received during the public notice period.   Defendant consents to entry of this Consent Decree without further notice to the Court.

53.   If for any reason the Court should decline to approve this Consent Decree in the form presented, this Consent

Decree is voidable at the discretion of any Party and the terms of the Consent Decree may not be used as evidence in any litigation between the Parties.

## XX.   EFFECTIVE DATE

54.   The effective date of this Consent Decree shall be the date upon which it is entered by the Court.

## XXI.   RECORD RETENTION AND PRESERVATION

55.   Defendant shall preserve, for a minimum of at least twelve (12) months after termination of this Consent Decree, all documents and records in his custody, control or possession and in the custody, control or possession of his employees, agents, assigns, contractors, subcontractors or consultants, which in any manner relate to this Consent Decree or to the performance of work under this Consent Decree.

## XXII.   SIGNATORIES/SERVICE

56.   Each undersigned representative of the United States and Defendant certifies that he or she has reviewed this Consent Decree and had the opportunity to have this Consent Decree reviewed by counsel, and is authorized to enter into the terms and conditions of this Consent Decree and to execute and bind legally such Party to this document.

57.   Defendant hereby agrees not to oppose entry of this Consent Decree by this Court or to challenge any provision

31

of this Consent Decree, unless the United States has notified Defendant in writing that it no longer supports entry of the Consent Decree based on public comments received pursuant to Paragraph 52 above.

58.   Defendant agrees that the person identified on his behalf under Section XVI is authorized to accept service of process by mail on behalf of Defendant with respect to all matters arising under or relating to this Consent Decree. Defendant hereby agrees to accept service by certified mail in that manner and to waive the formal service requirements set forth in Rule 4 of the Federal Rules of Civil Procedure and any applicable local rules of this Court, including but not limited to, service of a summons.

59.   Upon approval and entry of this Consent Decree by the Court, the Consent Decree shall constitute a final judgment pursuant to Rules 54 and 58 of the Federal Rule of Civil Procedure.

## XXIII.   **TERMINATION**

60.  This Consent Decree shall terminate within thirty (30) days after all of the following have occurred:

a.   Defendant has completed all work required by this Consent Decree;

b.    Defendant has paid all penalties and interest due under this Consent Decree and no penalties are outstanding or owed to the United States;

c.    Defendant has certified compliance with the terms and conditions of this Consent Decree to the United States; and

d.    The United States has not disputed Defendant's certification within sixty (60) days of receiving it.  If the United States disputes Defendant's certification, the Consent Decree shall remain in effect pending resolution of the dispute by the Parties or the Court.  If, at the end of the sixty (60) day period, the United States does not contest the certification, the Parties shall jointly petition the Court to terminate the Consent Decree.

So entered in accordance with the foregoing this 30th day of August, 2004.


s/ Paul A. Magnuson
UNITED STATES DISTRICT COURT JUDGE

33

<u>United States v. Robert Zeman</u>

THE UNDERSIGNED PARTIES enter into this Consent Decree in the above matter, relating to the sites enumerated in this Consent Decree:

FOR PLAINTIFF, UNITED STATES OF AMERICA:

THOMAS L. SANSONETTI
Assistant Attorney General
Environment and Natural Resources Division


_s/W. Benjamin Fisherow____          Date___6/22/04_____
W. BENJAMIN FISHEROW
Deputy Chief
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530



THOMAS B. HEFFELFINGER
United States Attorney

JOAN HUMES
Civil Division Chief



__s/Gregory Brooker_____          Date_____7/1/04_
GREGORY G. BROOKER
Assistant U.S. Attorney
District of Minnesota
600 United States Courthouse
300 South Fourth Street
Minneapolis, MN 55415
(612) 664-5689

United States v. Robert Zeman

FOR UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT:


 s/Kathleen D. Koch            Date_____6/10/04_____
KATHLEEN D. KOCH
General Counsel



 s/John P. Kennedy            Date__6/10/04_____
JOHN P. KENNEDY
Associate General Counsel



 s/John B. Shumway              Date___6/9/04_____
JOHN B. SHUMWAY
Deputy Assistant General Counsel
Office of General Counsel
U.S. Department of Housing and Urban Development
451 Seventh Street, SW
Washington, DC 20410

Intentionally Left Blank

<u>United States v. Robert Zeman</u>

FOR THE UNITED STATES ENVIRONMENTAL PROTECTION AGENCY:


_s/Eric J. Cohen for_____        Date_6/14/04_____
BERTRAM C. FREY
Acting Regional Counsel
U.S. Environmental Protection Agency
Region 5
77 West Jackson Boulevard
Chicago, IL 60604




 s/Mary T. McAuliffe____        Date_June 14, 2004____
MARY T. MCAULIFFE
Associate Regional Counsel
U.S. Environmental Protection Agency
Region 5
77 West Jackson Boulevard
Chicago, IL 60604

<u>United States v. Robert Zeman</u>

FOR ROBERT Zeman:


\_\_s/Robert Zeman_____          Date\_\_6/9/04_____
Robert Zeman
P.O. Box 11055
Minneapolis, MN 55411

**APPENDIX A (Subject Properties with Street Addresses, Number of Units, Units with Children, and Construction Date)**

| Child 6 or Under ? | | Address | Date of Const. |
|---|---|---|---|
| Yes<br>Duplex 2<br>No | | 401 Lowry Ave No. | 1908 |
| No | 1 | 426 23rd Ave No. | 1900 |
| Yes | 1 | 505 Knox Ave No. | 1910 |
| No | 1 | 526 Logan Ave No. | 1910 |
| Yes | 1 | 532 Logan Ave No. | 1910 |
| No | 1 | 931 Croydon Ave | 1910 |
| Yes | 1 | 1315 16th Ave No. | 1930 |
| No | 1 | 1403 Dupont Ave No. | 1925 |
| No | 1 | 1411 Morgan Ave No. | 1925 |
| No<br>Duplex 2<br>Yes | | 1515 Oliver Ave No. - back common area | 1930 |
| No | 1 | 1527 Queen Ave No. | 1930 |
| No | 1 | 2512 Humboldt Ave No. | 1910 |
| No. | 1 | 2707 Penn Ave No. | 1920 |
| Yes | 1 | 2816 James Ave No. | 1910 |
| Yes | 1 | 2822 James Ave No. | 1910 |
| No | 1 | 2911 3rd St No. | 1905 |
| No<br>Duplex 2<br>No | | 2932 Bryant Ave No. | 1910 |
| No | 1 | 3002 Vincent Ave No. | 1930 |
| No | 1 | 3541 10th Ave So. | 1916 |